**Not for publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DENISE PRATT,                         :        Civil Action No. 05-0544(NLH)
                                      :
          Plaintiff,                  :
                                      :
      v.                              :        **OPINION**
                                      :
HOUSING AUTHORITY FOR THE             :
CITY OF CAMDEN, et al.,               :
                                      :
          Defendants.                 :


**APPEARANCES:**

          Sonia Bell, Esquire
          South Jersey Legal Services, Inc.
          745 Market Street
          Camden, New Jersey 08102

          Attorney for Plaintiff


          Anthony L. Marchetti, Jr., Esquire
          Cureton Caplan, P.C.
          950B Chester Avenue
          Delran, New Jersey 08075

          Attorney for Defendants


**HILLMAN**, District Judge

     This matter has come before the Court on the parties' cross-
motions for summary judgment on Plaintiff's claims that
Defendants violated federal regulations and her due process
rights when it terminated her Section 8 rental assistance
benefits.  For the reasons expressed below, both motions are

granted in part and denied in part.

## I.   BACKGROUND

In April 2003, Plaintiff, Denise Pratt, became a participant in the Section 8 Housing Choice Voucher Program, which is a Department for Housing and Urban Development ("HUD") rental-assistance program administered locally by Defendant, Housing Authority for the City of Camden ("Camden Housing Authority" or "HACC").[1]  Under this Section 8 program, Pratt received vouchers to subsidize a portion of her rent at a HACC-approved unit located in Collingswood, New Jersey.  Pratt's tenancy was governed by the terms of her lease, the Section 8 Housing Choice Voucher Program contract, and federal regulations.

On June 21, 2004, Pratt's Section 8 benefits were terminated effective July 31, 2004.  Pratt claims that the termination was a violation of her due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and the United States Housing Act of 1937, 42 U.S.C. § 1437 et. seq. Pratt seeks injunctive relief restoring her participation in the Section 8 Housing Choice Voucher Program.  Pratt also seeks

---

[1]Defendants assert that Pratt participated in a project-based subsidy program rather than a voucher program.  See Def.'s Opposition Brief at 1, n.1 (explaining that a project-based subsidy provides the recipient with rent assistance for a particular building while a voucher subsidy is portable and may be used at any rental unit).  Although Pratt resided in a building that was designated by HUD and the HACC as a Section 8 housing project, see id. at 4, Pratt participated in the voucher program, see Pl.'s Ex. C.

damages for eviction and subsequent homelessness, civil conspiracy pursuant to 42 U.S.C. § 1985, and costs pursuant to 42 U.S.C. § 1988.

What precipitated her termination was an incident with a fellow tenant, Jerome Vance, that occurred on February 20, 2004.[2] Pratt claims that she was not told that this incident was the basis for her termination until a hearing that was held on July 13, 2004.  Pratt alleges that this deficiency of notice was in violation of federal law and a violation of her constitutional rights.  Pratt also claims that the hearing conducted regarding her termination of benefits violated federal law and her constitutional rights.  The February incident and the circumstances of her termination will be discussed in detail below.

**February Incident**

Jerome Vance lived in the apartment across the hall from Pratt.  According to a May 11, 2004 letter he wrote to their landlord, Mark Willis, and copied to Louis L. Howell, Assistant Director of Section 8 at HACC, Vance claims that on February, 20, 2004 another tenant, Ms. Hannah, coerced Pratt to knock on his door, even though Hannah knew that Vance wanted "nothing to do"

---

[2]It is unclear from the record on what specific date the incident occurred, but it appears to be February 20, 2004.  (See Pl.'s Ex. F, Vance Letter.)  The exact date of the incident is not material.

with Pratt.  (See Pl.'s Ex. F, Vance May 11, 2004 Letter.)  When

he opened the door thinking it was Hannah, Pratt ran into his

apartment uninvited and "was asked three (3) times to get out

which she purposely refused to do."  (Id.)  Vance stated that if

he had "to ask Ms. Pratt one more time to leave I would not have

been responsible for any altercations that may have ensued."[3]

(Id.)  Vance also stated that he put his complaints in writing at

the direction of Howell, who was inspecting the building that

day.

**Termination Letter**

On June 21, 2004, Pratt received a letter from Howell

informing her that her assistance payments were terminated

effective July 31, 2004.  (See Pl.'s Ex. A.)  The letter stated

that HACC was in receipt of two letters from "Mr. Vance,"

regarding her "annoyance and disruption of his peaceful

enjoyment."  The letter informed Pratt that "[t]hese actions or

inactions" by her violated the HACC Housing Choice Voucher

_____

[3]Vance's May 11, 2004 letter also details other encounters
between Vance and Pratt, including his allegations that Pratt was
tampering with his mail and that she vacuumed when she knew Vance
was sleeping during the afternoon.  (See Pl.'s Ex. F, Vance May
11, 2004 Letter.)  In another letter written directly to Howell,
Vance relates that a woman from another floor questioned him
about Pratt's assertion to her that "something was going on"
between Pratt and Vance, and that while Vance was speaking with
this woman, Pratt stood in her doorway "laughing and grinning to
herself."  (See Pl.'s Ex. E, Vance May 14, 2004 Letter.)  Because
Pratt's termination from the Section 8 program was ultimately
based on the February incident, these allegations are not
material.

contract "Section 4D #4 (other criminal activity that threatens the health, safety and peaceful enjoyment of other residents)" and "Lease #22 (Additional terms and conditions agreed to by both parties)." The letter also told Pratt that she could make a request for an informal hearing in writing within ten days of the date of receipt of the letter. The letter did not specify what "actions or inactions" by Pratt in relation to Mr. Vance caused her to violate her Section 8 contract or her lease.

**The Hearing**

Pratt requested a hearing, which was held on July 13, 2004. Defendant Christine Tinsley, a program analyst for HACC, served as the hearing officer. (See Pl.'s Ex. I, Section 8 Fair Hearing Report.) According to Tinsley's Hearing Report, Tinsley asked Pratt to respond to the charges, but her attorney stated that "she was not going to respond just yet and requested all the witnesses leave the room and I denied her request." (Id. at 1.) Because Pratt and her attorney "refused to respond," Tinsley asked Vance to "explain his complaint." (Id.) Vance related the same incident as he detailed in his May 11, 2004 letter.

Tinsley next asked Cheryl Lalla to speak. Lalla, the next door neighbor to Vance, appeared at the hearing as a witness. Lalla recounted that she did not see what happened on February 20, 2004, but she heard a disturbance. She stated that she heard Vance "yelling several times; get the f... out of my house," and

5

then heard the door slam.  (Id.)

 After Lalla, Frank Wysinger spoke.  Wysinger appeared at the
hearing as a witness and was fixing Lalla's sink on February 20.
Wysinger heard someone say "get the F... out of my apartment,"
and because Lalla was "scared" he "peeked into the hall."  (Id.
at 2.)  Wysinger related that he saw Hannah in the hall and "Ms.
Pratt being backed out of the apartment and then the door shut."
(Id.)  Wysinger also stated that there "was always some sort of
disturbance on this particular floor."  (Id.)

 Tinsley then reported that she "was given a hard time" by
Pratt's counsel "to get her client to respond to the
allegations."  (Id.)  Pratt then spoke, and Tinsley summarized
her statement:

> Mr. Vance had been in her apartment eating and they
> were family friends.  She said she knocked on his door
> and told him there was a package in the hall and he
> opened the door and told her to leave it and slammed
> the door in her face.  He later told her he was just
> joking.  She stated during the supposed incident, she
> said she and Ms. Hannah knocked on the door and he
> opened the door and moved to the side, which she felt,
> was a gesture to come in.  She said when he got nasty
> with her and told her to leave she left and she slammed
> the door in her face.

(Id.)  Pratt denied the incident and stated that "Mr. Vance did
not call the police."  (Id.)

 Tinsley then related that Howell and David Gonzalez were at
the building doing inspections in May, 2004 when Vance "made a
verbal complaint."  (Id.)  Howell instructed Vance to put his

complaint in writing.  After doing so, Pratt received the
termination letter from HACC.

Next Tinsley spoke to Sagrario Noll.[4]  Tinsley reports that
Noll stated that Willis paid Vance's rent as a bribe to come to
the hearing and lie about Pratt and Noll.  Tinsely then asked
Noll if she witnessed the incident, and she "first stated she had
then she changed her testimony when Mr. Howell challenged her
answer."  (Id.)  Willis asked to respond to Noll's allegations,
and played an audiotape of Noll "yelling and threatening" Lalla.
Tinsley reports that Noll called the police claiming that Lalla
had threatened and harassed her.  Tinsely also reports that
Willis "played the audiotape for the officer who began to
reprimand Ms. Knoll [sic] for her constant false calls to the
police department and threatened to arrest her if she made any
more false calls."[5]  (Id.)

Tinsley then issued her findings and opinion:

> There was a lot of testimony.  I listened to all
> parties and have decided I believe Ms. Pratt entered
> Mr. Vance's residence and was repeatedly asked to leave
> and refused as testified to by Mr. Vance, Ms. Lalla,

---

[4]Tinsley characterized Noll as a witness for Pratt.  Pratt
explains that Noll did not attend the hearing as a witness, but
rather simply accompanied Pratt to the hearing.  (Pratt Affidavit
¶ 16.)

[5]Obviously, Noll's interactions with Willis and Lalla and
her calls to the police are not relevant to Pratt's Section 8
hearing and the February incident.  This part of the proceeding,
as well as the rest of the hearing, will be discussed in more
detail below.

and Mr. Wysinger.  Ms. Pratt originally refused through
her attorney and then herself to tell her side of the
story.  Her witness Ms. Knoll [sic] did not witness the
incident at all and only made personal attacks on the
landlord who played a audiotape [sic] of Ms. Knoll
showing she apparently has been harassing another
resident (Cheryl Lalla) in the building, therefore her
testimony was irrelevant and not credible.  Therefore,
I move to uphold the decision to terminate the
assistance of Denise Pratt.

(Id.)

On July 19, 2004, Pratt received a letter from Tinsley
upholding the original decision by HACC.  (Pl.'s Ex. B.)

## II.  DISCUSSION

Both parties have moved for summary judgment, arguing that
there are no issues of material fact.[6]  Pratt claims that HACC
violated her due process rights because HACC failed to provide
her with the proper notice required under federal law for the
termination of her participation in the Section 8 program.
Specifically, the July 21, 2004 termination letter failed to
provide notice about which HUD regulation she violated, about
available grievance procedures, and about the right to
evidentiary information such as the right to access HACC's file
prior to the proceeding.  Pratt also argues that the termination
letter violated federal law because it failed to advise her of
the conduct she would be required to defend in order to prevent

---

[6]In addition to HACC, Pratt has named four HACC employees as
defendants in their individual capacities.  Their liability will
addressed below in the discussion on qualified immunity.

8

the termination of her Section 8 benefits.  Pratt also claims that HACC violated her due process rights because there was no legal justification for her termination.  Pratt argues that the February 20, 2004 incident was not "criminal activity" as defined by HUD regulations.

Additionally, Pratt claims that HACC violated her due process rights by not considering relevant and mitigating circumstances surrounding the alleged conduct HACC relied upon to propose Pratt's termination.  Specifically, Pratt argues that the HACC should have considered that Vance did not call the police to report Pratt's alleged entry into his apartment.  Pratt also contends that it is significant that Vance did not complain about the incident to their landlord or a HACC official until almost three months later, and that he only did so at the urging of Howell, the HACC official.

Pratt further claims that her due process rights were violated because the hearing was not adequate in the manner in which it was conducted.  Pratt argues that the HACC violated program regulations and Pratt's due process rights by failing to provide an impartial hearing officer who considered all the facts as required by federal regulations.  Pratt contends that Tinsley failed to consider mitigating circumstances, she advocated on behalf of the HACC when she was required to be impartial, she did not base her decision on the evidence presented at the hearing,

she refused to consider evidence that Pratt attempted to proffer, and she never discussed whether any criminal activity occurred, which was the basis for Pratt's termination.  Furthermore, Pratt claims that Tinsley refused to explain the basis for Pratt's termination at the beginning of the hearing, and that Tinsley left the hearing screaming at Pratt and her attorney.

HACC rejects all of Pratt's claims.  First, HACC argues that the termination letter complied with the federal regulations, Pratt had notice of the basis for her termination from the termination letter and a letter from the landlord to Pratt, and notice of her right to access her HACC file is not required. Second, HACC argues that Pratt's conduct during the February incident constituted criminal activity.  Third, HACC contends that the hearing did not violate Pratt's due process rights because the proceeding constituted a "fair hearing" under the law; Tinsley was impartial; Pratt's criminal activity was a valid basis for termination under the regulations; the facts presented at the hearing support the finding that Pratt's conduct during the February incident constituted criminal activity; and Tinsley based her decision on the facts presented at the hearing.  HACC also argues that Tinsley was not required to consider mitigating circumstances, and even if she was, Pratt did not present any evidence worthy of special consideration.  Finally, HACC argues that Pratt's arguments about HACC director Howell's influence

over Vance should be stricken as violative of Federal Civil Procedure Rule 56.

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

### B. Law Governing Section 8 Assistance

In Goldberg v. Kelly, 397 U.S. 254 (1970), the United States Supreme Court set the standard for pre-termination hearings for public assistance, which is a constitutionally-protected property

interest entitled to procedural due process.[7]  The Court explained that due process requires that "a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally."  <u>Goldberg</u>, 397 U.S. at 267-68. The Court further explained that these rights are important "where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases."  <u>Id.</u> at 268.

Following <u>Goldberg</u>, the federal government promulgated rules in accordance with the Supreme Court's decision.  The rules provide that a Public Housing Authority ("PHA"), such as HACC,

---

[7]The parties do not appear to dispute that Section 8 rental assistance is a constitutionally-protected property interest. <u>See</u> <u>Goldberg</u>, 397 U.S. at 262 (stating that welfare benefits are a matter of statutory entitlement for persons qualified to receive them, and holding that their termination involves state action that adjudicates important rights such that a constitutional challenge cannot be answered by an argument that public assistance benefits are a privilege and not a right); <u>Memphis Light, Gas & Water Division v. Craft</u>, 436 U.S. 1, 11-12 (1978)(holding that a property right in a governmental benefit exists if continued receipt of that benefit is guaranteed in the absence of cause for termination); <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577(1972)("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

may terminate a participant's assistance because of her action or
failure to act.  Housing and Urban Development, 24 C.F.R. §
982.552(a) (2006).  One ground for termination of assistance is
if the participant has been engaged in criminal activity.  Id. §
982.552(c)(1)(xi).  The PHA may terminate assistance for criminal
activity if it determines, based on the preponderance of the
evidence, that the participant has engaged in the activity,
regardless of whether she has been arrested or convicted for such
activity.  Id. § 982.553(c).  In determining whether to
terminate assistance, the PHA "may consider all relevant
circumstances such as the seriousness of the case, the extent of
participation or culpability of individual family members,
mitigating circumstances related to the disability of a family
member, and the effects of denial or termination of assistance on
other family members who were not involved in the action or
failure."  Id. § 982.552(c)(2)(i).

     The PHA must give a participant an opportunity for an
informal hearing to consider whether the PHA's decision to
terminate assistance for a participant's action or failure to act
is in accordance with the law, HUD regulations, and PHA policies.
Id. § 982.555(a)(1), (v).  The PHA must give the participant
prompt written notice that she may request a hearing, and the
notice must: "(i) Contain a brief statement of reasons for the
decision, (ii) State that if the family does not agree with the

decision, the family may request an informal hearing on the
decision, and (iii) State the deadline for the family to request
an informal hearing." Id. § 982.555(c)(2); see also id. §
982.552(d) (explaining that if the PHA terminates assistance, it
must give the participant a written description of her
obligations under the program, the grounds on which the PHA may
terminate assistance because of the participant's action or
failure to act, and the PHA informal hearing procedures). The
PHA must proceed with a hearing in a reasonably expeditious
manner upon the request of the participant. Id. § 982.555(d).

Prior to the hearing, a participant must be given the
opportunity to examine and copy any PHA documents that are
directly relevant to the hearing. Id. § 982.555(e)(2)(i). A
participant may be represented by a lawyer at her own expense.
Id. § 982.555(e)(3). The hearing "may be conducted by a person
or persons designated by the PHA, other than a person who made or
approved the decision under review or a subordinate of this
person." Id. § 982.555(e)(4)(i). The hearing officer may
regulate the conduct of the hearing in accordance with the PHA
hearing procedures. Id. § 982.555(e)(4)(ii). Both the PHA and
the participant must be given the opportunity to present evidence
and may question any witnesses. Id. § 982.555(e)(5). Evidence
may be considered without regard to admissibility under the rules
of evidence applicable to judicial proceedings. Id.

14

At the conclusion of the hearing, the hearing officer must issue a written decision, stating briefly the reasons for the decision.  Id. § 982.555(e)(6).  "Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented a the hearing."  Id.   A copy of the decision must be furnished promptly to the participant.  Id.   The PHA is not bound by a hearing decision if it is contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law.  Id. § 982.555(f).

## III. ANALYSIS

It is under the Goldberg principles and the HUD regulations that Pratt's claims and HACC's actions must be reviewed.[8]

### A.   Whether HACC Provided Pratt with Proper Notice

The parties dispute whether HACC's termination notice complies with HUD regulations.  The applicable regulation

---

[8] Pratt asserts a claim for HACC's violation of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, as well as for HACC's violation of the United States Housing Act of 1937, 42 U.S.C. § 1437, et seq., and the regulations promulgated thereunder at 24 C.F.R. Part 982. Pratt's constitutional claim is governed by general due process principles as discussed in Goldberg v. Kelly.  For Pratt's claim that HACC violated its regulations, a court exercises de novo review if the housing authority's actions are inconsistent with federal housing regulations or its authorizing legislation. Baldwin v. Housing Authority of the City of Camden, New Jersey, 278 F. Supp. 2d 365, 374 (D.N.J. 2003)(citing Ritter v. Cecil County, 33 F.3d 323, 327-28 (4th Cir. 2003)(citing Public Employees Retirement System v. Betts, 492 U.S. 158, 171 (1989))).

concerning notice for termination of assistance requires that the termination notice (1) contain a brief statement of reasons for the decision to terminate assistance, (2) state that if the family does not agree with the decision, the family may request an informal hearing on the decision, and (3) state the deadline for the family to request an informal hearing.  See 24 C.F.R. § 982.555(c)(2).  Based on this regulation, two of the parties' disputes can be readily addressed.  First, HACC's July 21, 2004 termination letter clearly complies with the requirement of informing Pratt that she may request an informal hearing, and that she must do so within ten days.  Second, even though it would be helpful to a participant, contrary to Pratt's contention the regulations do not require that HACC inform her of evidentiary information such as the right to access HACC's file prior to the hearing.[9]

The regulation does not, however, readily address the parties' dispute as to whether the termination letter adequately informed Pratt of reasons for the decision to terminate assistance.  The regulations do not more specifically explain what must be contained in the "brief statement of reasons," and HACC argues that its letter provided the required information, but Pratt argues that it did not.  After reviewing the language

---

[9]Information on the informal hearing procedures are given to participants when they are accepted into the program.  24 C.F.R. § 982.552(d)(3).

of the letter, as well as cases decided by other courts facing a similar challenge, it is evident that HACC's termination letter did not comply with the regulations or the Supreme Court's mandates in <u>Goldberg</u>.

Looking at the letter first, it simply states,

This office is in receipt of two letters from Mr. Vance regarding your repeated annoyance and disruption of his peaceful enjoyment.  These actions or inactions by you are in violation of the following:

Camden Housing Authority Administrative Plan Housing Choice Voucher Section 4D #4 (other criminal activity that threatens the health, safety and peaceful enjoyment of other residents).

Lease #22 (Additional terms and conditions agreed to by both parties)

On its face, the termination letter contains numerous defects.  One major defect is the vague statement of Pratt's "repeated annoyance and disruption" of Vance's peaceful enjoyment, and that her repeated behavior constituted "actions or inactions" such that it amounted to "criminal activity." The purpose of notice is to sufficiently notify Pratt of the reasons for the decision to terminate her benefits so that she could have an effective opportunity to defend herself.  <u>See</u> <u>Goldberg</u>, 397 U.S. at 268.  It is not Pratt's obligation to surmise what she did to warrant termination of assistance, and without more explanation, that is exactly what HACC's termination letter caused Pratt to do.  Correspondingly, even though the

17

regulations provide that HACC must only provide a brief statement, the letter would have remained brief had it included a statement that Pratt's February 20, 2004 encounter with Vance constituted her criminal activity.  Cf. id. (finding no constitutional deficiency in the content or form of New York City's pre-termination notice because it employed both a letter and a personal conference with a caseworker to inform the recipient of the precise questions raised about his continued eligibility, and because the recipient is told the legal and factual basis for the city's doubts).

There is no published opinion in this Circuit specifically addressing the adequacy of written notice for termination of assistance, but cases in other jurisdictions addressing the issue are instructive.  For example, in Edgecomb v. Housing Authority of the Town of Vernon, 824 F. Supp. 312, 313 (D. Conn. 1993), two parents and their two minor children participated in a Section 8 program.  When the mother's brother was visiting their apartment, he asked her to drive him to the store, and in the store parking lot he sold cocaine to two men.  Id.  Based on that incident, the mother was arrested and charged with conspiracy to sell cocaine, but the charges were subsequently terminated by *nolle prosequi*. Id.  As a result of that event, however, the family's Section 8 benefits were terminated.  Id.

The family challenged the adequacy of notice the housing

authority provided to terminate them from the Section 8 program.
The termination letter stated:

> The reason for this action is . . . having engaged in
> drug related criminal activity or violent criminal
> activity, including criminal activity by any family
> member and is in violation of HUD regulations at 24 CFR
> 882.118(b)(4).
>
> You have the right to request an informal hearing if
> you dispute the reasons or our intended action. You may
> retain counsel or other representation, if desired, at
> your own expense. Either you or your counsel will be
> given an opportunity to examine evidence and question
> any adverse witnesses and will also be given an
> opportunity to present testimony and evidence in your
> favor.

Id.

After reviewing the HUD regulations and the Goldberg
principles, the court determined that the notice of termination
for "having engaged in drug-related criminal activity or violent
criminal activity, including criminal activity by any family
member" was insufficient to inform the plaintiffs adequately of
the allegations against them.  Id. at 315.  The court explained
that the notice was deficient because it did not indicate which
family member committed the proscribed acts, what the nature of
the alleged crime was, or when the relevant acts were committed,
and it did not provide notice of adverse evidence so that they
would be able to rebut it.  Id.   The court noted that the letter
merely restated the regulation relied on, and that a notice which
"merely parrot[s] the broad language of the regulations" is
insufficient.  Id. (citing Billington v. Underwood, 613 F.2d 91,

19

94 (5th Cir. 1980)).

The court then explained the contents of a notice of
termination of assistance that would comply with due process
requirements:

> The regulations interpreted in light of Goldberg v.
> Kelly, 397 U.S. at 267, require timely and adequate
> notice detailing the reasons for the proposed
> termination.  A proper notice in compliance with the
> regulations would state the particular felony and the
> person who allegedly committed it, and would give a
> brief factual statement concerning the incident.  Such
> would impose no significant burden upon defendants,
> while the additional safeguards thus provided would
> reduce significantly the risk of an erroneous
> deprivation of Section 8 benefits.

Id. (citing Mathews v. Eldridge, 424 U.S. 319 (1976)) (other
citation omitted).

Similarly, in Billington v. Underwood, 613 F.2d 91, 94 (5th
Cir. 1980), the court held that notice of termination to a
Section 8 recipient violated his due process rights.  The
plaintiff was informed by letter that he was ineligible for
assistance because "his previous housing records and habits
indicate a detrimental effect on tenants and project
environment."  Id. at 92 (internal quotations omitted).  The
plaintiff requested a hearing, but instead of a hearing, a
meeting was held at the office of the housing authority's legal
counsel.  Id.  At the meeting, the housing authority's legal
counsel informed the plaintiff that the denial of his eligibility
for public housing was final and asserted that he was ineligible

because allegedly he had failed to pay an unidentified bill approximately five years earlier, had illegally lived in a housing authority project at some unspecified time, had been declared a "bad" tenant by his former landlord, and had been accused by a former sheriff of illegally selling liquor.  Id. The court noted that the plaintiff had not been informed of the specific factual bases underlying the accusations, nor was he accorded a subsequent hearing at which to present evidence refuting the charges first unveiled to him at the hearing.  Id. As a result of that, the plaintiff, unable to prepare evidence specifically countering the charges levied against him, contended generally that the stated bases for denying his eligibility had no basis in fact or law.  Id. at 92-93.

The court found that the plaintiff was not provided with an adequate statement of the basis for the housing authority's decision that he was ineligible for public housing.  Id. at 94. The court explained that the notice must be "sufficiently specific for it to enable an applicant to prepare rebuttal evidence to introduce at his hearing," and that because the housing authority "merely parroted the broad language of the regulation," the plaintiff was unable to defend adequately against the truth of the housing authority's basis for rejecting him.  Id.  The court elaborated:

> The housing authority's legal counsel did not
> specifically disclose what bill [plaintiff] allegedly

had failed to pay, nor did it give the source of this
putative information.  Similarly, the statement of
"reasons" did not identify the evidentiary basis for
charging [plaintiff] with having lived illegally in
public housing, nor did it explain what he had done to
be considered a "bad" tenant by his landlord.
[Plaintiff] also was not provided with the details,
such as the alleged dates and sources of information,
of the charge by a "former sheriff" that he had
illegally sold liquor. He thus could not prepare to
test adequately the veracity of the housing authority's
determination of his ineligibility, in contradiction of
the purpose of the United States Housing Act of 1937
and the regulations implemented thereunder.

Id. at 94-95.

Here, the notice Pratt received from HACC is similar to the
notice in Edgecomb and Billington.  The letter merely states that
her neighbor contacted HACC regarding her "repeated annoyance and
disruption of his peaceful enjoyment," which violated the Section
8 program's prohibition against "other criminal activity that
threatens the health, safety and peaceful enjoyment of other
residents."  The notice did not inform Pratt which interaction
with Vance was the basis for her termination, the date of the
incident, or how her behavior constituted any sort of criminal
activity.  Without that specific information, Pratt could not
have known how to prepare rebuttal evidence to introduce at her
hearing or to adequately defend against the truth of HACC's basis
for terminating her assistance.  Instead, HACC "merely parroted"

22

the broad language of the Voucher form.[10]

HACC argues that its notice to Pratt was sufficient because Pratt should have known from a May 26, 2004 letter the landlord sent to Pratt the exact behavior upon which HACC based its decision to terminate her assistance.  The letter states that Willis and HACC had received a complaint from Vance "in which he detailed you illegally entered his unit and despite repeatedly demanding you leave his unit, you refused to do so.  It was only after you subjected him to your harassment and menacing presence, did you finally leave his unit."  (Pl.'s Ex., Document No. 16-8, Willis May 24, 2004 Letter.)  With this argument, HACC is effectively contending that any deficiency in its notice is cured by Pratt's "actual notice" of the conduct at issue.

This argument must fail.  Even if Pratt could have connected the dots that the incident described by Willis in his May 24, 2004 letter constituted the "criminal activity" alleged by HACC in its June 21, 2004 termination notice, it is HACC's burden to sufficiently notify her of the reasons for the decision to terminate her benefits.  Allowing the Willis letter to supplement

---

[10]Pratt contends that a violation of Voucher Form HUD-52646 is not even the proper basis for a termination of Section 8 benefits, and that the only grounds for termination are outlined in 24 C.F.R. §§ 982.552 and 982.553.  Pratt also argues that a violation of the Voucher form cannot be a basis for termination because Pratt had never seen the form.  Pratt's argument appears to have merit, but because the notice is insufficient despite this issue, it will not be specifically addressed.

HACC's deficient notice would relieve HACC of its due process obligations. Indeed, to hold otherwise would permit housing authorities to fail to fully comply with federal regulations when they believe that the recipient already knows of the basis for his termination. Thus, the Willis letter has no bearing on the adequacy of HACC's notice to Pratt.

Specificity of the notice a housing authority provides its recipients regarding termination of assistance is especially important where, as here, the basis for termination is a serious allegation such as criminal activity. Even though HACC informed Pratt of the provision of her HACC contract that she violated, because of the serious nature of the violation, HACC had a special obligation to provide Pratt with the date of the incident and a brief description of how her conduct constituted criminal activity. Because it did not, HACC's termination notice did not provide Pratt with the proper notice as required by the tenets of due process or HUD regulations.[11]

---

[11]The Court notes that Pratt's Section 8 assistance was also terminated because HACC claimed she violated the "additional terms and conditions" of her lease. In their submissions, the parties focus mainly on Pratt's alleged violation of HUD regulations, but Pratt argues that this lease provision is not a ground for termination because it violates New Jersey state law. HACC, however, states that Pratt "was terminated for illegal conduct, not because she was or could be evicted." Def.'s Opp. at 12.

Termination for a violation of this type of lease provision is not one enumerated in HUD regulations. See 24 C.F.R. §§ 982.552, 982.553 (listing various conduct that results in

## B.   Whether HACC Provided Pratt with a Proper Hearing

The parties also dispute whether HACC's hearing complied with federal regulations and due process.  The regulations require: (1) that the hearing be conducted by a person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person; (2) that the hearing officer regulates the conduct of the hearing in accordance with the PHA hearing procedures; (3) that both the PHA and the participant must be given the opportunity to present evidence and may question any witnesses; (4) that evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings; (5) that the hearing officer must issue a written decision, stating briefly the reasons for the decision; and (6) that a copy of the decision must be furnished promptly to the participant.  See 24 C.F.R. § 982.555(e).

It is undisputed that the hearing officer, Tinsley, was not the person who made or approved the decision to terminate Pratt's

---

termination of benefits).  The only ground for termination that concerns lease violations provides that the "PHA must terminate program assistance for a family evicted from housing assisted under the program for serious violation of the lease."  Id. § 982.552(b)(2).  At the time of the termination of Pratt's benefits, she had not been evicted from her apartment. Regardless, even if the violation of the "additional terms and conditions" provision in her lease were a valid basis for termination, the same deficiencies in HACC's notice and hearing exist as for the "criminal activity" ground for termination.

assistance, and she was not a subordinate of the person who made the decision.  It is also undisputed that Tinsley considered the evidence without regard to admissibility under the rules of evidence applicable to judicial proceedings, and that she furnished a copy of her written decision to Pratt promptly after the hearing.  It is disputed, however, that Tinsley regulated the conduct of the hearing in accordance with the PHA hearing procedures.  It is also disputed about Pratt's ability to present her evidence and question any witnesses.  Finally, Tinsley's deliberation and her ultimate determination are disputed.

With regard to these disputed issues, Pratt claims that HACC violated her due process rights by HACC's failure to provide an impartial hearing and hearing officer because Tinsley advocated on behalf of HACC.  Pratt also claims that her rights were violated by Tinsley's conduct at the hearing, her failure to consider the full evidence presented at the hearing, her refusal to consider certain evidence presented by Pratt, and her failure to discuss whether any criminal activity occurred, which was the basis for Pratt's termination.  Additionally, Pratt claims that there was no legal justification for her termination because the February 20, 2004 incident was not "criminal activity" as defined by HUD regulations.  HACC denies these claims and contends that Pratt's hearing and ultimate termination complied with the law.

Again, as with the regulations concerning written notice,

the regulations governing the hearing do not precisely address
Pratt's concerns.  Specifically regarding Tinsley's decision to
uphold Pratt's termination of Section 8 benefits, the regulations
simply direct that the hearing officer must consider the evidence
without regard to admissibility under the rules of evidence
applicable to judicial proceedings and briefly state the reasons
for the decision.  The regulations do not elaborate on the scope
of the evidence or what the brief statement must contain.

An explanation by HUD in its Final Rule concerning the
requirements for termination hearing is helpful.  HUD explained,

> The statement of decision required by the regulation
> must be truly informative as to the reasons for the
> decision.  This would include a short statement of the
> elements of fact or law on which the decision is
> actually based.  A bare and conclusory statement of the
> hearing decision, that does not let the participant
> know the basic reasons for the decision, will not
> satisfy the regulatory requirement.

Section 8 Housing Assistance Payments Program; Existing Housing,
49 Fed. Reg. 12215, 12230 (March 29, 1984).

Goldberg also provides assistance.  The Supreme Court
directed that the "decisionmaker's conclusion as to a recipient's
eligibility must rest solely on the legal rules and evidence
adduced at the hearing." Goldberg, 397 U.S. at 271.  Then, in
order to "demonstrate compliance with this elementary
requirement, the decision maker should state the reasons for his
determination and indicate the evidence he relied on, though his

27

statement need not amount to a full opinion or even formal findings of fact and conclusions of law." Id.; see also Edgecomb, 824 F. Supp. at 316 (holding that the "hearing officer's conclusory statement that 'there was a preponderance of evidence that indicated that a Family member did engage in such drug related activity while on the Section 8 Program, which is a violation of 24 C.F.R. § 882.118' must be considered insufficient" because the "opinion did not state the elements of fact or law on which the decision to uphold the termination of assistance was based[,] [n]or did the hearing officer specify the reasons for her determination or indicate the evidence on which it rested").

Thus, despite the regulations' lack of specificity, it is axiomatic that if a participant's assistance is terminated for a particular violation, the hearing officer must determine, based on the preponderance of the evidence presented at the hearing, whether the participant violated that regulation. Correspondingly, after that analysis, it is also clear that the written opinion must explicitly state that the hearing officer determined that the participant violated that regulation. Performing both of these tasks satisfies the "elementary requirement" that the decision to terminate benefits must rest solely on the legal rules and evidence adduced at the hearing.

Here, it is clear that Tinsley did not meet the elementary

28

requirement.  Pratt's assistance was terminated because HACC determined she had engaged in "criminal activity" in violation of her HACC contract.[12]  Nowhere in Tinsley's Section 8 Fair Hearing Report does she discuss how Pratt's conduct, as described by the testimony of Vance and the other witnesses, constituted criminal activity.  Tinsley simply reported that after listening to all the parties, she moved "to uphold the decision to terminate the assistance of Denise Pratt."  Even though Tinsley's report is only required to briefly state the reasons for the decision, her conclusory statement is insufficient.  Tinsley's report should have contained, at a minimum, a statement describing how Pratt's conduct qualified as criminal activity.  The absence of such a statement indicates that Tinsley's decision did not rest on any legal basis.  Consequently, HACC violated Pratt's due process rights and HUD regulations because it failed to provide her with a fair hearing.[13]

---

[12]See supra note 10.

[13]The hearing, as reported by Tinsley, raises additional concerns.  One concern is why Howell, the Assistant Director of HACC who sent Pratt her termination letter, was permitted to question Pratt's friend, Ms. Noll.  Howell's participation in the hearing in this manner raises impartiality and bias issues.
        Another concern is the antagonism between Tinsley and Pratt's counsel.  Tinsley stated that she was given "a hard time" by Pratt's counsel and reported twice that Pratt "refused through her attorney" to tell her side of the story.  Tinsley's own record suggests that she might have considered her feelings towards Pratt's counsel in making her decision to uphold the termination of Pratt's assistance.
        Yet another concern is the interlude between the landlord, Willis, and Noll.  It is unclear why Noll's relationship with

Even though Pratt's claims based on HACC's violation of due process and federal regulations are inherently intertwined, the Court does not have the task of substantively determining, under *de novo* review of HACC's administrative procedures, whether Pratt's conduct amounted to "criminal activity" as defined by HUD rules.  Because HACC violated her constitutional right to due process by not providing Pratt with proper notice or a proper hearing, it is immaterial whether Pratt actually did violate HUD regulations.  Indeed, even if her conduct during the February 20, 2004 incident did amount to "criminal activity" and HACC's decision was substantively correct, HACC did not provide Pratt with a notice and hearing that complied with due process requirements.

### C.   Qualified Immunity

In addition to HACC, Pratt has asserted claims against Howell, Tinsley, Maria Marquez, Executive Director of HACC, and Laurie Lynard, Director of Section 8 at HACC, in their individual

---

Willis was relevant to Pratt's hearing, or why Tinsley permitted Willis to play an audiotape recording of Noll threatening another witness, Ms. Lalla.  Even though consideration of evidence does not need to comply with the rules of evidence applicable to judicial proceedings, it is troubling that the hearing to determine the termination of Pratt's assistance was sidetracked into some sort of mini-trial of Noll.

Despite all of these concerns, as discussed above, the hearing failed to comply with due process standards on the most basic level by failing to address the legal basis upon which Pratt's assistance was terminated.  As a result, these other issues, although disconcerting, will not be addressed in more detail.

capacities.  The parties dispute whether qualified immunity applies to these four HACC employee defendants.

The qualified immunity analysis begins with the threshold question of whether the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the conduct of a person acting under color of law violated a constitutional right.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002)(citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).  If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary.  Id.  If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established.  Id.  "In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. (citing Saucier, 533 U.S. at 200) (other citation and quotations omitted).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id. (citation and quotation omitted).  If a person acting under color of law did violate a clearly established constitutional right, then he must be denied the protection afforded by qualified immunity.  Id. (citation omitted).

The claims against Marquez and Lynard are readily disposed of.  Pratt does not make any specific claims against Marquez or

31

Lynard, there is no mention of them in any of Pratt's submissions, and there is no evidence they were personally involved in any of the decision-making processes.  Thus, because there is no evidence that they violated Pratt's due process rights, no further inquiry into their liability is necessary.

With regard to Howell and Tinsley, the letter Howell drafted to Pratt notifying her of the termination of her assistance, and the hearing Tinsley conducted concerning her termination, both have been found to be constitutionally deficient.  There is no evidence, however, that Howell or Tinsley knew that their conduct was deficient.  Indeed, the dispute over whether the notice and hearing complied with due process standards and federal regulations demonstrates that the notice requirements and hearing procedures were not clear. Consequently, Howell and Tinsley are entitled to immunity from liability on all of Pratt's claims against them in their individual capacities.

**IV.   REMEDY/DAMAGES**

As discussed above, HACC is liable to Pratt for violating her due process rights for its failure to provide proper notice or a proper hearing.  Summary judgment shall be entered in favor of Pratt as to HACC's liability.

Pratt, however, has not requested a particular remedy other than the reinstatement of her Section 8 benefits, and she has not

32

articulated any damages as a result of HACC's actions.
Therefore, the parties are directed to file supplemental briefing
addressing what remedy is appropriate in light of HACC's
liability to Pratt for violating her constitutional right to due
process.  An appropriate order will issue.


Dated: September 27, 2006        s/ Noel L. Hillman
Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.